UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 09-92-GWU

CHADWICK L. KIRBY,                                                          PLAINTIFF,

VS.                              **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                            DEFENDANT.

## INTRODUCTION

Chadwick Kirby brought this action to obtain judicial review of an unfavorable administrative decision on his applications for Disability Insurance Benefits and for Supplemental Security Income. The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1.  Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2.  If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3.  The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of

1

>   impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.
>
> 4.  At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.
>
> 5.  If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

09-92 Chadwick L. Kirby

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

09-92 Chadwick L. Kirby

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

4

09-92  Chadwick L. Kirby

then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental

contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The Administrative Law Judge (ALJ) concluded that Kirby, a former security guard/dispatcher, suffered from impairments related to knee pain and chronic obstructive pulmonary disease/bronchitis.  (Tr. 14, 17).  Despite the plaintiff's impairments, the ALJ determined that he could still perform a restricted range of light level work in the national economy. (Tr. 15).  Since the claimant would be able to return to his past relevant work, he could not be considered totally disabled.  (Tr. 17, 19).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

In determining that Kirby could return to his past relevant work as a security guard/dispatcher, the ALJ relied heavily upon the testimony of Vocational Expert Joyce Forrest. The hypothetical factors presented by the ALJ included such factors as (1) an inability to lift more than 40 pounds occasionally and 10 pounds on a frequent basis; (2) an inability to stand or walk for more than six hours in an eight-hour day or sit for more than six hours in an eight-hour day; (3) an inability to more than occasionally push/pull or use foot controls with the right lower extremity; (4) an inability to more than occasionally climb ramps, stairs, ladders and ropes, balance, stoop, kneel, crouch, and crawl; and (5) a need to avoid concentrated exposure to full body vibration, fumes, odors, dusts, or gases and hazards such as unprotected heights and dangerous machinery. (Tr. 56). In response, Forrest testified that Kirby's past light level work as a security guard/dispatcher could still be performed. (Id.). The ALJ relied upon this testimony to support the denial decision. (Tr. 18).

With regard to Kirby's physical status, he was seen for a painful right knee at the Anne Wasson Health Clinic on April 13, 2006. (Tr. 232). Range of motion, flexion and extension were reported to be normal. (Id.). The plaintiff returned to the

clinic four days later continuing complaints of right knee pain, shortness of breath and diminished hearing. (Tr. 270). Dyspnea was diagnosed. (Id.).

Dr. Ronald Dubin also treated Kirby's right knee in April of 2006 for pain and reported mild effusion with full flexion. (Tr. 264). Internal derangement and a history of Osgood-Schlatter's disease were suspected.[1] (Id.). An MRI scan of the knee was obtained in May of 2006 which revealed no internal derangement and pre-existing Osgood-Schlatter disease. (Tr. 258).

Dr. Abdulkader Dahhan evaluated Kirby's pulmonary status in May of 2006. A history of bronchitis and bronchial asthma was reported. (Tr. 412). A mild, reversible obstructive ventilatory impairment was diagnosed. (Id.). Dr. Dahhan opined that the plaintiff retained the respiratory capacity to perform coal mining or physically comparable work. (Id.).

Dr. Barry Burchett examined Kirby in June of 2006. The plaintiff noted a one-year history of right knee pain. (Tr. 301). Hearing and breathing problems were also indicated. (Tr. 301-302). Physical examination revealed decreased hearing but adequate for normal conversation. (Tr. 302). Lung fields were clear to percussion and auscultation with no wheezes, rales or rhonchi. (Tr. 303). The claimant was not short of breath upon exertion or lying flat. (Id.). Examination of

---

[1] Osgood-Schlatter disease is an ailment causing a painful inflammation below the kneecap in children experiencing growth spurts during puberty. www.mayoclinic.com/Health/about this site/AM00057, viewed November 6, 2009.

the right knee revealed a prominent proximal tibial tubercle in the right knee consistent with remote Osgood-Schlatter overgrowth.  (Id.).  Neurological examination revealed no atrophy with well-preserved sensory modalities. (Tr. 304). Pulmonary function testing revealed mild chronic obstructive pulmonary disease. (Id.).  Dr. Burchett opined that plaintiff's claim of a 50 feet walking tolerance due to shortness of breath was not consistent with the examination results.  (Id.).

In August of 2006, Kirby returned to Dr. Dubin with complaints of left knee pain and right shoulder pain.  (Tr. 362).  Physical examination revealed no sign of rotator cuff tear.  (Id.).  Range of motion was full.  (Id.).  Mild effusion was noted on examination of the left knee.  (Id.).  In September, Dr. Dubin reported that an MRI scan of the right shoulder revealed evidence of a small cyst adjacent to the labrium with no tearing.  (Tr. 361).  An MRI scan of the left knee indicated minimal chondromalacia with degeneration of the meniscus.  (Id.).  A tear in the meniscus was not observed.  (Id.).  Surgery was not recommended and functional limitations were not imposed.  (Id.).  The plaintiff stated he could tolerate the pain.  (Id.).

Dr. Carlos Hernandez, a non-examining medical reviewer, was the only physician of record to identify the existence of specific physical restrictions.  Dr. Hernandez opined that Kirby could lift a maximum of 20 pounds occasionally and 10 pounds frequently.  (Tr. 399).  The doctor restricted the plaintiff to standing or walking for no more than two hours in an eight-hour day.  (Id.).  Sitting was possible

09-92  Chadwick L. Kirby

for six hours in an eight-hour day. (Id.). With regard to postural activities, Dr. Hernandez indicated that the claimant should never climb ladders, ropes or scaffolds and should no more than occasionally climb stairs or ramps, balance, stoop, kneel, crouch, and crawl. (Tr. 400). Kirby should also avoid concentrated exposure to vibration, hazards and environmental pollutants. (Tr. 402). The ALJ indicated that he gave this report great weight. (Tr. 17).

Kirby argues that the ALJ erred by failing to find that he was limited to standing or walking for two hours a day as indicated by Dr. Hermandez. As previously noted, the ALJ found that the plaintiff could stand or walk for six hours in an eight-hour day. The court also notes that Dr. Hernandez precluded climbing ladders, ropes and scaffolds entirely while the ALJ found that these activities could be performed occasionally. The defendant asserts that the ALJ had the responsibility to weigh the evidence and determine the claimant's residual functional capacity and was not bound by the opinion of Dr. Hernandez. 20 C.F.R. §§ 404.1545(a)(1), 404.1546(c), 416.945(a)(1), 416.946(c). However, the administrative regulations also recognize that:

> State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians and psychologists as opinion evidence, except for the ultimate determination about whether you are disabled.

10

09-92 Chadwick L. Kirby

20 C.F.R. § 404.1527(f)(1)(i). The regulations further provide that:

> Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist . . . .

20 C.F.R. § 404.1527(f)(1)(ii). Thus, the ALJ at least needed to address Dr. Hernandez's opinion in the decision and explain why it was not being followed. The ALJ did not note reasons why these uncontradicted limitations of Dr. Hernandez were rejected. Furthermore, he actually indicated that he was giving the opinion great weight. Thus, under these circumstances, the ALJ should have followed the opinion of Dr. Hernandez.

Nevertheless, the court finds this problem constitutes harmless error in the current action. Kirby was found capable of returning to his past relevant work as a security guard/dispatcher. The plaintiff had the burden of providing sufficient evidence to prove that he could no longer perform this work. With regard to climbing, the Dictionary of Occupational Titles (DOT) at § 372.167-010 dealing with the position of security guard dispatcher indicates that climbing is not a requirement of this position. The DOT does not address the issue of sit/stand restrictions. During the hearing, the plaintiff did not identify the amount of time he was required to stand and walk in performing this work. (Tr. 28). This issue was also not addressed in the Work Activity Report (Tr. 149-160), the Disability Reports (Tr. 161-175, 205-226) and the Work History Report (Tr. 176-177) completed by the

11

09-92 Chadwick L. Kirby

claimant. Therefore, Kirby did not meet his burden of demonstrating that he could not perform his past relevant work.

The ALJ properly determined that Kirby did not suffer from a "severe" mental impairment. Treatment records from the Kentucky River Comprehensive Care Center note diagnoses of depression and a bipolar disorder. (Tr. 439). However, specific mental restrictions were not identified. The mere diagnosis of a condition does not prove its severity and its disabling effects must still be shown. Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988). Psychologists Ilze Sillers (Tr. 319) and Jay Athy (Tr. 384), the non-examining medical reviewers, each opined that the plaintiff's mental problems were not "severe." No treating or examining source of record contradicted these opinions. The claimant cites treatment records from St. Mary's Mental Health Center indicating he had suicidal tendencies and panic attacks in crowds. (Tr. 349, 351). However, the court notes that the St. Mary's records were dated from April, 1999 to April, 2000 (Tr. 336-354), more than five years before his alleged onset date of November 1, 2005 (Tr. 104). Thus, they provide little insight into his level of functioning during the relevant time period. Therefore, substantial evidence supports this portion of the administrative decision.

Kirby argues that the ALJ did not properly evaluate his subjective pain complaints. Pain complaints are to be evaluated under the standards announced in Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.

09-92  Chadwick L. Kirby

1986): there must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

In the present action, Kirby was found to be suffering from a potentially painful condition.  However, even if he could be found to have satisfied the first prong of the so-called Duncan test, the claimant does not meet either of the alternative second prongs.  As previously noted, Dr. Burchett found no muscle atrophy or sensory abnormalities upon physical examination.  The Anne Wasson Health Clinic treatment notes repeatedly indicated normal knee flexion and range of motion findings.  Kirby stated to Dr. Dubin that he could tolerate his pain levels. Despite his complaints of breathing problems, Dr. Dahhan thought the claimant could still perform the heavy, dirty work of coal mining. The plaintiff objects to the ALJ's having taken into consideration his return to part-time work stating that this was for his in-laws and should not be deemed a competitive work situation. However, the court agrees with the ALJ that this factor is very probative of his ability to engage in competitive employment and, along with the other cited factors, does undermine the credibility of his claim of being totally disabled.  Thus, the evidence does not appear sufficient to confirm the severity of the alleged pain and objective medical evidence would not appear to be consistent with the plaintiff's claims of

13

09-92 Chadwick L. Kirby

disabling pain. Therefore, the ALJ would appear to have properly evaluated Kirby's pain complaints.

The undersigned concludes that the administrative decision should be affirmed. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 10th day of November, 2009.

Signed By:

*G. Wix Unthank*

United States Senior Judge